Marston, J.:
In the fall of 1874 Thomas H. Crapo sowed about sixteen *162 acres of wheat on shares upon lands of third parties. In November of'the same year he made an oral agreement with Seybold to sell him (Seybold) his interest in the wheat for one hundred bushels of oats, Seybold agreeing to deliver the oats at that time or store them for Crapo until he should want to take them away. The bill of exceptions sets forth that there was evidenc.e tending to show that the final arrangement between the parties was, that the oats should remain in the bin in Mr. Seybold’s bam, mixed together with other oats, there being altogether in one inseparable bulk three hundred and twenty-one bushels; that Crapo never saw the oats, and the one hundred bushels were never measured out or separated from the bulk of three hundred and twenty-one •bushels. Evidence was also given tending to show that upon the llth of November an agreement was made whereby Seybold and one Yan Sideline wore on the next day to draw the oats to Ionia and sell them, Seybold to receive the ^proceeds and pay over the same to Crapo.
After this last agreement had been made, and upon the same day, a levy, by virtue of an execution, was made upon the oats, by one of Thomas Crapo’s creditors, and at a still later hour upon the same day Crapo notified Seybold that he need not draw the oats the next day, as he had sold the wheat to his father, the plaintiff in error. There was also some evidence tending to show that Thomas Crapo had before the levy informed one of the parties upon whose land the wheat was growing that he had sold his interest therein to Seybold, who would carry out his (Crapo’s) contract in relation to cutting and shocking it, and that he had endeavored to sell the oats to other parties. Evidence was given on the part of defendant tending to show that no agreement had in fact been made, and that it Was left optional with Crapo to sell the wheat to any one else if he could. In the harvest of 1815 both Seybold and David Crapo commenced cutting the wheat, each forbidding the other; Seybold left the field; Crapo finished cutting and shocking it, and while in the shock and undivided Seybold replevined what he claimed was his interest in the wheat under his agreement with Thomas H. Crapo.
*163 It is unnecessary to set forth the charge and refusals to charge of the court, as the only question is, whether the evidence tended to show a completed sale so that the title passed.
We are of opinion that the evidence fails to show such an agreement as would pass the title to either the oats or the wheat. The agreement was but an executory one, and required farther action on the part of both parties to carry it out in order to perfect the sale. Seybold had not done all that he could to pass the effectual control of the oats to Crapo; nothing had been done to place the property within the exclusive power and dominion of the purchaser. The vendor still retained the actual possession, control and power of disposing of the oats levied upon and sold. At the time of the levy the oats had not been measured or separated in *any way. Seybold might have sold and delivered them to a third party without in any way violating his agreement. Had Seybold fed out these oats or sold them to some other person, Crapo could have maintained no action therefor, as he could have proved no title to the particular hundred bushels so fed or sold. Had the oats levied upon been stolen, clearly the loss would not have fallen upon Crapo. Seybold would still have been bound under his contract to have delivered one hundred bushels to Crapo. Under the agreement in this case, until the oats were measured or separated and identified in some way, we do not see how it can be said the title had passed to any particular lot. This being so, Crapo had no interest in any particular hundred bushels which could be levied upon and sold under an execution. And any sale so made would not relieve Seybold from carrying out his part of the agreement by delivering the oats if he intended to insist upon performance of the contract by Crapo. The evident intention of the parties was, that upnn delivery of the oats, or payment of the proceeds thereof, title to the Wheat should pass, but not before. The agreement was an executory one, never performed, and no title to the wheat passed to the plaintiff in the replevin suit.
It follows that the judgment of the court below must be reversed, with costs, and a new trial ordered.
The other justices concurred.